IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00040-REB-BNB

MARK DUHALL,

Plaintiff,

v.

LENNAR FAMILY OF BUILDERS,

Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendant's **Motion for Summary Judgment** [Doc. #100, filed 09/25/2008]. I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant on the remaining claim against it.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. On February 7, 2005, the plaintiff purchased a home located at 5350 Standard Drive, Colorado Springs, Colorado, from defendant Lennar. *Motion*, Ex. A-1. The plaintiff's purchase of the home was pursuant to a Purchase Agreement with the defendant dated July 19, 2004. Id. at Ex. A-2.

2. In his Complaint, the plaintiff makes the following allegations:

      a.  During the walk-through inspection, several "missing things" were documented. Anne Galloway, a customer sales representative, promised the plaintiff that Lennar would fix everything. Id.

      b.  Subsequently, the plaintiff noticed other deficiencies. For example, the heater did not work. Id.

      c.  The plaintiff requested help from customer service by sending facsimiles "week after week with [] follow up phone calls." Id. at p. 4. "In between, they would call and come and do some few things here and there." Id. at p. 5.

      d.  Jeff Gerhard, a Lennar supervisor, came to the plaintiff's home three times in an attempt to replace a handrail. Mr. Gerhard kept ordering the wrong materials. The plaintiff asked Mr. Gerhard why it was taking so long to obtain the correct materials for the handrail. Mr. Gerhard replied, "What do you Africans know about housing? It is rather unfortunate that I have to work in such a place . . . . I have to remove my men from here, you don't deserve our service." Id. at pp. 6-7.

      e.  The plaintiff asked Mr. Gerhard if he did not buy his house just like anybody else. Mr. Gerhard repeated the same words and added that his company would not do the rest of the work. He further stated, "You can take it anywhere you want and no one would listen to you." The plaintiff asked what he meant, and Mr. Gerhard replied, "You are an African and have an accent, a color [sic] person. No one would believe you." Mr. Gerhard then walked off. Id. at p. 7.

      f.  The plaintiff was upset and sent an email to Lennar headquarters in Houston, Texas. Somebody from headquarters responded that they would take care of the situation. Id. at

pp. 7-8.  Nobody ever called the plaintiff.  He called the Denver office and talked to Brian Sorsby.  Id. at p. 8.  Mr. Sorsby asked what it would take to correct the situation, and the plaintiff told him $9,884.00.  Id. at pp. 8-9.  Mr. Sorsby sent the plaintiff a check for $5,000.00.  Id. at p. 9.

       g.  The plaintiff called Mr. Sorsby and sent him a certified letter, but Mr. Sorsby did not respond.

       h.  The plaintiff has lost his house, his car, and all of his "things in storage" as a result of having to contend with the house issues.  Id. at pp. 5, 6, 9.

3.  On or about January 10, 2006, Brian Sorsby, Regional Litigation Manager for the defendant, tendered a check to the plaintiff in the amount of $5,000.00 as a settlement of claims the plaintiff may have had against the defendant at that time which related to his home.  *Motion*, Ex. A-4, ¶¶ 2-3; Ex. A-3.  Mr. Sorsby sent the plaintiff a letter with the settlement check.  Id. at ¶ 3.  The letter states the following:

> Per our phone conversation on January 6, 2006, in an effort to resolve your claim for relief because of the length of time it has taken to complete your warranty items, you agreed to the offer of $5,000.00 as a final settlement of your claim.  The [sic] would be paid by check and presented to you Friday (January 12, 2006), the same day the final warranty repair will be made, that of replacing the bottom panel to your garage door.
>
> By depositing/cashing of this check for $5,000.00 you do hereby agree to this settlement for your outstanding claim for relief for lost income, personal time, aggravation or any other inconvenience and financial costs incurred by you because of any warranty work performed on your home.

Id. at Ex. A-5.

4. In addition, Mr. Sorsby placed a restrictive endorsement on the back of the check by which the plaintiff acknowledged that his endorsement was payment in full for everything referenced in the letter. Id. at Ex. A-4, ¶ 3.

5. The plaintiff endorsed and cashed the check. Id. at Ex. A-3.

The only claim remaining in this case is the plaintiff's claim of discrimination pursuant to 42 U.S.C. § 1981. *Order issued April 22, 2008* [Doc. #64].

### III. ANALYSIS

### A. Settlement

The defendant asserts that the evidence demonstrates "that in January of 2006 Lennar and DuHall reached an accord and satisfaction relating to all possible claims asserted by DuHall against Lennar, including those arising from or relating to any contracts between Lennar and DuHall. Accordingly, there is no triable issue remaining for the Court." *Motion*, ¶ 18. The defendant points to Colorado state law regarding accord and satisfaction to conclude that the plaintiff's endorsement of the check settled all possible claims the plaintiff may have raised against it.

The defendant does not cite any cases which have construed an accord and satisfaction as a waiver of potential discrimination claims brought pursuant to 42 U.S.C. § 1981, and my research does not reveal any cases on point. However, the Tenth Circuit Court of Appeals has made clear that the application of general contract principles is not sufficient when interpreting agreements which relinquish civil rights claims:

> In considering whether a general release was knowing and voluntary, some circuits purport to apply ordinary contract principles and focus primarily on the clarity of language in the release. The majority of circuits, however, explicitly look beyond

>> the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver. In so doing, these courts have considered the following circumstances and conditions under which the release was signed:
>
>> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."
>
>> In our view, the totality of the circumstances approach is the better one. While evaluation of the language of the contract is necessary to determine the validity of the waiver of discrimination claims, our inquiry cannot end there. Especially "[i]n light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is also necessary." Coventry, 856 F.2d at 522-23; see also Watkins, 530 F.2d at 1172 ("[t]o assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute").

Torrez v. Public Service Co. of New Mexico, 908 F.2d 687, 689-90 (10th Cir. 1990) (quotations and citations omitted except where noted) (footnote omitted).

The parties do not discuss any of the Torrez factors. I note that the letter and the restrictive endorsement do not specifically include settlement of potential discrimination claims. Rather, the settlement is limited to the plaintiff's "outstanding claim for relief for lost income, personal time, aggravation or any other inconvenience and financial costs incurred by you

because of any warranty work performed on your home" and "because of the length of time it has taken to complete your warranty items." In addition, it is not clear from the record whether the $5,000.00 exceeds the benefits the plaintiff was already entitled to receive. I decline to interpret the agreement to include a waiver of the plaintiff's right to assert a discrimination claim. At best, a genuine issue of material fact exists as to whether the plaintiff's endorsement of the check constituted a waiver of his right to bring a claim for discrimination.

### B. 42 U.S.C. § 1981

Section 1981 prohibits intentional race discrimination in the making and enforcement of contracts with both public and private actors. 42 U.S.C. § 1981. The statute's protection extends to the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. at 1981(b).

The basis for the plaintiff's section 1981 claim is not entirely clear from the allegations of the Complaint. In his latest responses to the defendant's interrogatories, however, the plaintiff claims that the defendant delayed performance of its contractual obligations to fix a railing and a furnace in his home, and denied full and timely compensation for the delay, because the plaintiff is of African descent. *Motion for Sanctions Against Plaintiff* [Doc. #110], Ex. A, pp. 1-4.

The defendant asserts that the plaintiff cannot show that Lennar had the intent to discriminate on the basis of the plaintiff's race. *Motion*, p. 10. In his response to the defendant's Motion, the plaintiff includes a two page, unsworn document captioned "Testimony of Benjy Jacques an eyewitness of the event that took place at 5350 Standard Dr. Colorado Springs, CO 80922." *Plaintiff's Response to Defendant's Summary Judgement and Plaintiff Move for*

*Judgment Against Defendant* [Doc. #107] (the "Response").[1]  This document contains the

following allegations of discriminatory remarks make by Jeff Gerhard:

> When Mr. DuHall questioned Mr. Jeff Gerhard why he kept bringing the wrong material to replace the handrail for the 3rd time and kept wasting his time form [sic] earning his income?  To Mark [sic] and my amazement, Mr. Gerhard said, "What do you Africans know about housing?"  Mr. DuHall asked why?  "It is rather unfortunate I have to work in this house.  (Referring to Mark [sic] house) I have to remove my men from here.  Color [sic] people just as yourself don't deserve our service."  Mr. DuHall and I could not believe our ears, and asked Mr. Gerhard what did he say.  And without regret repeated the same words color [sic] people such as yourself don't deserve our service and added, that his company (Lennar) will not do the rest of the work.  You can take it any where you want, and no one will listen to you!"  Mr. DuHall asked what makes you think so?  Mr. Gerhard said, "you are a color [sic] person from Africa and you have an accent, and no one will listen to you."

*Response*, Ex. 4a, p. 2.

Mr. Jacques' written statement is not sworn and is not admissible evidence.

The plaintiff's Response also includes several pages of deposition testimony.  Id. at Ex. 4b.  The testimony appears to be that of Mr. Jacques and appears to verify the statements made in the written statement.  The plaintiff has not included a signature page or an affidavit to identify or authenticate the deposition testimony, however.  Consequently, neither is the deposition testimony admissible evidence.

---

[1] Although the plaintiff has included in the title of his Response the phrase "and plaintiff move for judgment against Defendant," the Response does not specifically seek judgment against the defendant.  Moreover, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."  D.C.COLO.LCivR 7.1C.  I construe the plaintiff's Response solely as a response to the defendant's Motion.

I have searched the record for admissible evidence regarding the defendant's intent to discriminate against the plaintiff based on his race. Although there are allegations of discriminatory remarks in the Complaint, *Complaint*, pp. 6-7, these allegations do not constitute admissible evidence because they are unsworn. I have also searched the plaintiff's most recent response to the defendant's interrogatories and requests for production of documents. *Motion for Sanctions* [Doc. #110], Exs. A and B. Although the responses are sworn, id. at pp. Doc. #110-2, p. 13 and 110-3, p. 2, they make only vague references to discrimination.[2]

Even if I were to assume that the allegations of the Complaint and Mr. Jacques' statements were admissible evidence, it is undisputed that Mr. Gerhard did not hold a management position, nor did he have authority to hire or fire employees or make final decisions regarding the work to be done on a Lennar home. *Motion*, Ex. A-11, ¶ 6. Discriminatory comments made by an employee who does not possess decision-making capability are not sufficient to demonstrate a discriminatory animus on behalf of the employer. Saulsberry v. St. Mary's University of Minnesota, 318 F.3d 862, 867-68 (8th Cir. 2003). To prove that discriminatory comments are direct evidence of discrimination under section 1981, there must be some nexus between the alleged discriminatory statements and the failure to perform contractual obligations. See Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999). Consequently, even assuming the record contained admissible evidence that Mr. Gerhard made the comments attributed to him, the comments are insufficient to hold Lennar liable for discrimination under 42 U.S.C. § 1981.

---

[2] I also note that the defendant refers to an alleged discriminatory comment made by Maryann Coleman. *Motion*, p. 11. I do not find any evidence, admissible or not, of a discriminatory comment made by Ms. Coleman.

Without direct evidence of discrimination, a plaintiff suing under section 1981 may prove discrimination with indirect evidence using the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Perry V. Woodward, 199 F.3D at 1135. The plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); James v. Sears, Roebuck and Co., Inc., 21 F.3d 989, 992 (10th Cir. 1994). If this burden is met, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for its conduct. St. Mary's Honor Center, 509 U.S. at 506-07; James, 21 F.3d at 992. If the defendant meets its burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons for its conduct are pretext for intentional discrimination. St. Mary's Honor Center, 509 U.S. at 515-16; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Cone v. Longmont United Hosp. Assoc., 14 F.3d 526, 529 (10th Cir. 1994).

The circuit court has stated that to establish a prima facie case of discrimination under section 1981, a plaintiff must show the following:

> (1) that the plaintiff is a member of a protected class;
>
> (2) that the defendant had the intent to discriminate on the basis of race; and
>
> (3) that the discrimination interfered with a protected activity as defined in § 1981.

Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1101-02 (10th Cir. 2001).

As discussed above, the record does not contain admissible evidence demonstrating that the defendant had the intent to discriminate on the basis of race. However, even assuming the plaintiff could establish a prima facie case, the defendant has provided evidence that during the

time the plaintiff owned his house, Lennar's office in Colorado Springs underwent a period of restructuring and transition whereby staff levels were decreased and workers and customer care representatives were transferred or terminated.  *Motion*, Ex. A-4, ¶ 4; Ex. A-11, ¶ 3.  The staffing and organizational changes caused by the restructuring and transition contributed to delays in finalizing the work on the plaintiff's home.  Id. at Ex. A-11, ¶ 4.  The delays in the completion of warranty and other work at the plaintiff's home were not unusual in relation to other Lennar customers in Colorado Springs during 2005 and early 2006.  Id. at ¶ 5.  This evidence establishes a legitimate, nondiscriminatory reason for the defendant's conduct.

The plaintiff has not set forth any evidence tending to show that Lennar's reasons for its conduct are pretext for intentional discrimination.  To the contrary, he has previously attempted to assert a class action on behalf of himself and many of his neighbors--some of whom are Caucasian--who he alleges have suffered many of the same difficulties as he.  *Re: Plaintiff's Response to the Defendant's Correspondence* [Doc. #16] (stating that "[c]ertain of my neighbors had been a victim of the same deceptive business of the Defendant" and attaching a list of 16 people "who will join me to restore their right and dignity towards the defendant"); *Re: Plaintiff's Response to the Defendant's Correspondence* [Doc. #18];  *Re: Plaintiff's Opposition to Defendant* [sic] *Motion to Dismiss, and Plaintiff's Move for Default Judgement* [Doc. #31], p. 2 (stating that the plaintiff has notified the defendant about a possible class action and has provided him a list of other people "that are complaining about their houses, and the work was not finish[ed], or that the heat, bathrooms, and kitchens, or a simple water installation were not done, they are complaining about the same thing that I have suffered from, and today we are in search of legal aid for a class action"); *Plaintiff's Continuous Request for Class Action to be*

*Granted* [Doc. #81]; *Motion*, Ex. A-9, 193:2-5 (admitting that some of the individuals on his list are Caucasian) and Ex. A-10.  Indeed, the plaintiff continues to threaten class action.  *Response*, p. 10.

The plaintiff has failed to create a material fact dispute regarding whether the defendant intentionally discriminated against him in the performance of its contractual obligations.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion for Summary Judgment be GRANTED and that summary judgment enter in favor of the defendant.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 7, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge